**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**WEST PALM BEACH DIVISION**

CASE NO. 9:23-CV-80512-ROSENBERG/REINHART

JOHN F. MORRISON, M.D., an individual )
and MORRISON CLINIC, P.A., a Florida )
professional association, )
         )
        Plaintiffs, )
         )
v. )
         )
DELRAY MEDICAL CENTER, INC., a )
Florida corporation, DELRAY MEDICAL )
CENTER MEDICAL STAFF )
CORPORATION, a Florida not-for-profit )
corporation, NEUROLOGICAL )
CONSULTANTS OF SOUTH FLORIDA, )
LLC d/b/a BRAIN AND SPINE CENTER )
OF SOUTH FLORIDA, a Florida limited )
Liability company, and LLOYD ZUCKER, )
M.D., an individual, )
         )
        Defendants. )
_____)

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO**
**DEFENDANT DELRAY MEDICAL CENTER, INC.'S MOTION FOR PARTIAL**
**JUDGMENT ON THE PLEADINGS**

## <u>TABLE OF CONTENTS</u>

**Page**

I.    PRELIMINARY STATEMENT ...................................................................1

II.   FACTUAL ALLEGATIONS ....................................................................2

III.  LEGAL STANDARD..............................................................................5

IV.  ARGUMENT ...........................................................................................6

     A.    The Settlement Agreement Should Be Rescinded Because it is the Product of Defendants' Fraudulent Inducement. .................................................. 7

          1.    Plaintiffs Have Specifically Pled Fraudulent Inducement. ........................7

               a.    Plaintiffs Have Adequately Pled Falsity. ........................................7

               b.    Plaintiffs Have Adequately Pled Reliance. ....................................10

          2.    DMC's Argument that Morrison Was Not Entitled to Rely on DMC's Misrepresentations is Not Supported by Any Case Law. .............12

          3.    Plaintiffs Have Always Sought to Rescind the Agreement. .....................14

          4.    Plaintiffs Are Not Estopped From Rescinding the Agreement.................16

     B.    Plaintiffs Have Plausibly Pled that the Settlement Agreement Is Not Supported by Consideration, and It Is Thus Unenforceable. ............................... 18

     C.    The Scope of Claims Alleged to be Released Is a Question of Fact.................... 23

V.    CONCLUSION.......................................................................................24

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

CASES

*Affiliati Network, Inc. v. Wanamaker*
    847 F. App'x 583 (11th Cir. 2021) ..................................................................... 12-13

*Amoco Oil Co. v. Gomez*
    125 F. Supp. 2d 492 (S.D. Fla. 2000) ......................................................................21

*Aschi v. Clearwater Bay Marine Ways, Inc.*
    569 So. 2d 1379 (Fla. 2d DCA 1990) ......................................................................21

*Ashbritt*, No. 09-20458-Civ-TORRES, 2009 U.S. Dist. LEXIS 139365......................................22

*Barbe v. Villeneuve*
    505 So. 2d 1331 (Fla. 1987)......................................................................................15

*Barrakuda Ltd. v. Zazaby Jewels, Inc.*
    2020 WL 7493097 (S.D. Fla. Sept. 24, 2020) ..........................................................21

*Berg v. Capo*
    994 So. 2d 322 (Fla. 3d DCA 2007) .........................................................................10

*Billings v. Orlando*
    287 So. 2d 316 (Fla. 1973).......................................................................................17

*Black v. Kerzner Int'l Holdings Ltd.*
    958 F.Supp.2d 1347 (S.D. Fla. 2013) ........................................................................5

*Bryan Ashley Int'l, Inc. v. Shelby Williams Indus*.
    Inc., 932 F. Supp. 290, 291 (S.D. Fla. 1996) ............................................................5

*Colombian A.F. Purchasing Agency Acofa v. Union Temporal Ovl CVRA*
    *Helicopteros 2018 LLC*
    No. 21-CV-62516-RUIZ/STRAUSS, 2022 U.S. Dist. LEXIS 232538 (S.D.
    Fla. Dec. 27, 2022)....................................................................................................12

*Columbus Hotel Corp. v. Hotel Mgmt. Co.*
    116 Fla. 464, 156 So. 893 (1934)..............................................................................14

*Coral Gables Imp. Motorcars, Inc. v. Fiat Motors of N. Am. Inc.*
    673 F.2d 1234 (11th Cir. 1982) ................................................................................21

*Cuhaci v. Kouri Grp., LP*
    No. 20-cv-23950, 2021 U.S. Dist. LEXIS 105119 (S.D. Fla. June 2, 2021)...........12

*Fintak v. Fintak*
  120 So. 3d 177 (Fla. 2d DCA 2013) ...........................................................................16

*Gonzalez v. Williams Scotsman, Inc.*
  No. 10-61880-CIV, 2010 WL 4923104 (S.D. Fla. Nov. 29, 2010) ...........................................6

*Green Leaf Nursery v. E.I. DuPont de Nemours & Co.*
  341 F.3d 1292 (11th Cir. 2003) ..............................................................................13

*Horsley v. Feldt*
  304 F.3d 1125 (11th Cir. 2002) ...............................................................................6

*Horsley v. Rivera*
  292 F.3d 695 (11th Cir. 2002) .................................................................................6

*Ingram v. Butler*
  2015 WL 9911314 (S.D. Fla. Dec. 23, 2015) (J., Williams) ...................................................21

*Joy v. Oaks Club Corp.*
  343 So. 3d 632 (Fla. 2d DCA 2022) ...........................................................................16

*Kuehne v. FSM Capital Mgmt., LLC*
  No. 12-80880-CIV-ROSENBAUM/SELTZER, 2013 U.S. Dist. LEXIS 60672
  (S.D. Fla. Apr. 29, 2013) ......................................................................................9

*Lakes of the Meadow Vill. Homes Condo. Nos. One v. Arvida/Jmb Partners, Ltd.
  P'ship*
  714 So. 2d 1120 (Fla. 3d DCA 1998) ..........................................................................23

*Losey v. Nail*
  521 F. App'x 717 (11th Cir. 2013) ..............................................................................5

*Martinair Holland, N.V. v. Benihana, Inc.*
  No. 17-CV-20163-GAYLES, 2020 U.S. Dist. LEXIS 179810 (S.D. Fla. Sep.
  30, 2020) ......................................................................................................15

*Matey v. Pruitt*
  510 So. 2d 351 (Fla. 2d DCA 1987) ...........................................................................22

*Medimport, S.R.L. v. Cabreja*
  929 F. Supp. 2d 1302 (S.D. Fla. 2013) ..........................................................................7

*Mergens v. Dreyfoos*
  166 F.3d 1114 (11th Cir. 1999) ...............................................................................13

*Moriber v. Dreiling*
  194 So. 3d 369 (Fla. 3d DCA 2016) ..................................................................7, 11, 14

*Perez v. Wells Fargo N.A.*
    774 F.3d 1329 (11th Cir. 2014) ....................................................................6, 23

*Pettinelli v. Danzig*
    722 F.2d 706 (11th Cir. 1984) ...........................................................................14

*Pipeline Contractors, Inc. v. Keystone Airpark Auth.*
    276 So. 3d 436, 437 (Fla. 1st DCA 2019) ........................................................17

*Price v. Airlift Int'l, Inc.*
    181 So. 2d 549 (Fla. 3d DCA 1966) ...................................................................21

*Real v. Goodell*
    No. 2:19-CV-35-FTM-29UAM, 2019 WL 2211111 (M.D. Fla. May 22, 2019) ..............17

*Santana v. Miller*
    314 So. 3d 346 (Fla. 3d DCA 2020) ..................................................................17

*Sherrod v. Sch. Bd. of Palm Beach Cty.*
    550 F. App'x 809 (11th Cir. 2013) ....................................................................17

*Smith v. Atl. Springs Condo. Ass'n*
    No. 0:15-cv-61155-KMM, 2015 U.S. Dist. LEXIS 157830 (S.D. Fla. Nov. 23,
    2015) ............................................................................................... 6, 22-23

*Sugar v. Estate of Stern*
    201 So. 3d 103 (Fla. 3d DCA 2015) ..................................................................14

*Thunderwave, Inc. v. Carnival Corp.*
    954 F. Supp. 1562 (S.D. Fla. 1997) ...................................................................2, 6

*United States v. Ashbritt, Inc.*
    No. 09-20458-Civ-TORRES, 2009 U.S. Dist. LEXIS 139365, at *7-8 (S.D.
    Fla. July 21, 2009) ...................................................................................... 18-19

*Williams v. Gaffin Indus. Servs.*
    88 So. 3d 1027 (Fla. 2d DCA 2012) ..................................................................15

*Woods v. On Baldwin Pond, Ltd. Liab. Co.*
    634 F. App'x 296 (11th Cir. 2015) .................................................................. 9-10

**OTHER AUTHORITIES**

5A Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1368
    (1990)......................................................................................................... 2, 5-6

Federal Rule of Civil Procedure 7 .............................................................................6

Federal Rule of Civil Procedure 9(b)..................................................................... 9-10

Federal Rule of Civil Procedure 12(c) ............................................................... 1, 5-6

10 Fla. Jur. 2d Compromise, Accord, and Release § 50 ...............................................19

11 Fla. Jur 2d Contracts §§ 85, 87 ........................................................................19, 21

27 Fla. Jur 2d Fraud and Deceit § 75 ...........................................................................21

Judgment on the Pleadings—Practice Under Rule 12(c), 5C Fed. Prac. & Proc.
    Civ. § 1368 (3d ed.) ..................................................................................................2, 6

Plaintiffs John F. Morrison, M.D. ("***Dr. Morrison***") and Morrison Clinic, P.A. ("***Morrison Clinic***," and together with Dr. Morrison, the "***Plaintiffs***") hereby submit their memorandum of law in opposition to Defendant Delray Medical Center, Inc.'s ("***DMC***") motion for partial judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c).

## I.     PRELIMINARY STATEMENT

DMC brings this motion for judgment on the pleadings pursuant to Rule 12(c) (the "***Motion***"), yet fails to even attempt to engage with or satisfy the legal standard required for such a motion.  DMC's Motion focuses entirely on Plaintiffs' claim that the purported "Settlement Agreement" is voidable and unenforceable due to fraud and lack of consideration, but DMC ignores that such a legal conclusion requires the resolution of serious factual disputes among the parties.

Under the well-established pleading standards, Plaintiffs have pled every element required to proceed to discovery on its claim that the Settlement Agreement was procured by fraudulent inducement, and Plaintiffs have also plausibly pled that the Settlement Agreement is unenforceable and void for lack of consideration.  The facts are pled, and the law is clear, but DMC attempts to turn the pleading stage on its head.  It is evident that DMC disagrees with the facts pled by Plaintiffs; however, that is an issue to be resolved through discovery, not at the pleading stage. DMC's meandering arguments rely on a tortured misconstruction of the allegations and law, and attempt to shift the burdens and standards.  When the dust settles from DMC's barrage of strained arguments, it becomes clear that this is a dispute that must resolved through discovery and is inappropriate at this early stage.

It bears repeating that at this stage, pursuant to Rule 12(c), all of Plaintiffs' pleadings are assumed to be true, all of Defendants' contravening assertions are taken to be false, and judgment on the pleadings can be granted only when there are no material facts in dispute.  DMC's Motion

thus fails on that standard for very fundamental reasons: (1) Plaintiffs' have specifically pled fraudulent inducement; (2) DMC cannot demonstrate that no material facts are in dispute; (3) DMC's argument that Dr. Morrison cannot rely on its false representations cannot meet (and actually ignores) the very case law upon which it relies, because the Settlement Agreement did not settle any ongoing or threatened lawsuit concerning fraud; (4) Plaintiffs' pleadings have always sought to rescind the Settlement Agreement and are not estopped from doing so; (5) Plaintiffs have pled that they enjoyed no benefits from the Settlement Agreement; and (6) Plaintiffs have pled that the Settlement Agreement is not supported by consideration.

DMC cannot bypass the pleading stage by simply ignoring it.  As a matter of law, Plaintiffs' pleadings are sufficient, and any factual disputes can and should be addressed through discovery.

## II.    **FACTUAL ALLEGATIONS**[1]

Dr. Morrison is a Board-certified neurosurgeon, and has demonstrated over several years of practice in New York and South Florida specialized expertise in spine surgery, brain surgery, trigeminal neuralgia, spinal fusions, herniated discs, neuro-trauma surgery, peripheral nerve surgery, cerebrovascular, and excision of brain and spine tumors, among other areas of medicine. (D.E. 52, First Amended Complaint, the "FAC" ¶ 15.)  In the Spring 2019, Dr. Morrison applied to obtain Clinical Privileges at DMC for Neurosurgery and the ED Trauma Call.  (FAC ¶ 39.)  At that time, the vast majority of the neurosurgeons on the ED Trauma Call included Dr. Zucker and other members of the Brain and Spine Center controlled and owned by Dr. Zucker.  (FAC ¶ 43.)

---

[1] Pursuant to well-established legal authorities, in a motion for judgment on the pleadings, all of the allegations in the non-movant's (Plaintiffs') pleadings are assumed to be true, and all of the movant's allegations are assumed to be false; and therefore, the factual allegations herein only refer to Plaintiffs' pleadings.  See § 1368 Judgment on the Pleadings—Practice Under Rule 12(c), 5C Fed. Prac. & Proc. Civ. § 1368 (3d ed.) (emphasis added); *see also Thunderwave, Inc. v. Carnival Corp.*, 954 F. Supp. 1562, 1564 (S.D. Fla. 1997).  Plaintiffs incorporate herein all of their pleadings, and the exhibits attached thereto.

Dr. Zucker stood to gain financially from this arrangement, as he profited from Brain and Spine members being on the ED Trauma Call.  (FAC ¶ 45.)

On or about October 30, 2019, DMC granted Dr. Morrison's request for Clinical Privileges, but denied him from the ED Trauma Call because DMC falsely represented that the ED Trauma Call was full and could not accommodate another physician.  (FAC ¶ 46.)  This representation was proven false, because soon thereafter, Dr. Tim Burke joined the Brain and Spine Center controlled by Dr. Zucker, and was immediately assigned to the ED Trauma Call, in contravention of the alleged "full" roster.  (FAC ¶ 51.)  Upon learning of Dr. Burke's assignment, Dr. Morrison made reasonable inquiries to understand what happened, but Defendants continued to make a series of nonsensical excuses that were inconsistent with the DMC Bylaws.  (FAC ¶ 53.)  In November 2021, Dr. Morrison was reappointed with Clinical Privileges at DMC, but again denied assignment to the ED Trauma Call.  (FAC ¶ 58.)

Dr. Morrison continued to report to DMC leadership about Dr. Zucker's unfair targeting of Dr. Morrison, and about Dr. Zucker's inappropriate financial relationship with DMC's preferred neurosurgery medical device distributor – Dr. Zucker's wife was the sales representative for this distributor.  (FAC ¶ 59.)  Because of Dr. Morrison's continued complaints, DMC and Dr. Zucker engaged in a campaign to target and drive out Dr. Morrison from DMC and out of the neurosurgery market in South Florida altogether.  (FAC ¶ 59, 66.)  As part of this campaign, Defendants secretly conspired to fraudulently induce Dr. Morrison to resign from DMC as retaliation for Dr. Morrison's reporting of concerns to DMC leadership.  (FAC ¶ 82.)

DMC conducted a secret meeting and then ███████████████████████████████████

███████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████



████████████████████████████████████████████████. (FAC ¶¶ 83, 86.)  A summary suspension is separate from an Investigation under the Bylaws, does not necessitate or require an Investigation, "and the required elements of an Investigation (*e.g.*, notice to the Practitioner of the initiation of the investigation) continue to apply in the case of a Summary Suspension."  (FAC ¶ 35.) ████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████. (FAC ¶¶ 88-93.) ████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████ (FAC ¶ 89.)

████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

██████████████. (D.E. 108, "Morrison Answer," at ¶ 42.) ████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

(Morrison Answer, ¶ 42 and Exh. D.) ████████████████████████████████████

████████████████████████████████████████████████

███████████████████████████████████████. (Morrison Answer ¶ 42.)

 Dr. Morrison relied on DMC's fraudulent misrepresentations and omissions, and as a result, was induced to resign from DMC on July 15, 2022, and on that same date, DMC imposed

on Dr. Morrison a sham and unenforceable Settlement Agreement that was procured by fraud and is thus unenforceable.  (FAC ¶ 93.)

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████.  (FAC ¶ 93.)  In addition, the Settlement Agreement does not provide Dr. Morrison with any consideration, and is unenforceable for that reason, because DMC had no actual or potential bona fide claims against Dr. Morrison that were released or could have been released by the Settlement Agreement.  (FAC ¶ 94; Morrison Answer, at Exhs. A and C.)  For all of the reasons set forth in Plaintiffs' pleadings, and the exhibits thereto, the Settlement Agreement is unenforceable and cannot serve to bar any of Plaintiffs' claims.

## III.    **LEGAL STANDARD**

When the defendant is the movant, "[a] motion for judgment on the pleadings is governed by the same standard as a motion to dismiss for failure to state a claim on which relief may be granted." *Black v. Kerzner Int'l Holdings Ltd*., 958 F.Supp.2d 1347, 1349 (S.D. Fla. 2013). "A motion to dismiss and a motion for judgment on the pleadings should not be granted unless 'the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Losey v. Nail*, 521 F. App'x 717, 719 (11th Cir. 2013) (internal citations omitted).

Federal district courts have applied a "fairly restrictive standard in ruling on motions for judgment on the pleadings." *Bryan Ashley Int'l, Inc. v. Shelby Williams Indus*., Inc., 932 F. Supp. 290, 291 (S.D. Fla. 1996) (citing 5A Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1368 (1990)).  And pursuant to Wright & Miller's Federal Practice and Procedure cited by this Court, "for purposes of the court's consideration of the Rule 12(c) motion, ***all of the well pleaded factual allegations in the adversary's pleadings are assumed to be true and all contravening assertions in the movant's pleadings are taken to be false***. Thus, in effect, the party

opposing the motion has the benefit of all possible favorable assumptions."  § 1368 Judgment on

the Pleadings—Practice Under Rule 12(c), 5C Fed. Prac. & Proc. Civ. § 1368 (3d ed.) (emphasis

added); *see also Thunderwave, Inc. v. Carnival Corp.*, 954 F. Supp. 1562, 1564 (S.D. Fla. 1997)

("[T]he district court must view the facts presented in the pleadings, and all inferences drawn

thereof, in the light most favorable to the non-moving party.").

Judgment on the pleadings under Rule 12(c) is appropriate only "when there are no material

facts in dispute, and judgment may be rendered by considering the substance of the pleadings and

any judicially noticed facts." *Gonzalez v. Williams Scotsman, Inc.*, No. 10-61880-CIV, 2010 WL

4923104, at *1 (S.D. Fla. Nov. 29, 2010) (*quoting Horsley v. Rivera*, 292 F.3d 695, 700 (11th Cir.

2002)).  "If a comparison of the averments in the competing pleadings reveals a material dispute

of fact, judgment on the pleadings must be denied." *Smith v. Atl. Springs Condo. Ass'n*, No. 0:15-

cv-61155-KMM, 2015 U.S. Dist. LEXIS 157830, at *3 (S.D. Fla. Nov. 23, 2015) (quoting *Perez*

*v. Wells Fargo N.A.*, 774 F.3d 1329, 1335 (11th Cir. 2014)).  All pleadings are considered in

determining whether any material fact is in dispute with respect to the claims pled – including

answers to counterclaims and the exhibits thereto.  *See* Fed. R. Civ. P. 7 (listing answer to

counterclaim as a pleading); *see also Horsley v. Feldt*, 304 F.3d 1125, 1134 (11th Cir. 2002)

(holding that exhibits to an answer are considered "part of the pleadings and can be considered on

a Rule 12(c) motion for judgment on the pleadings").

## IV.   **ARGUMENT**

Accepting Plaintiffs' pleadings as true, and any contravening pleadings by Defendants as

false, there is a genuine dispute between the parties whether the Settlement Agreement is

unenforceable and should be rescinded for the following two reasons: (1) the Settlement

Agreement is the product of Defendants' fraudulent inducement and it should be voided and

rescinded; and (2) the Settlement Agreement is not supported by consideration and thus is unenforceable.

**A.      The Settlement Agreement Should Be Rescinded Because it is the Product of Defendants' Fraudulent Inducement.**

Plaintiffs have clearly pled that Dr. Morrison was fraudulently induced into signing the Settlement Agreement, and Plaintiffs have been specific in alleging the statements and omissions that were false. While DMC disputes those allegations, it does not, and cannot, claim that there are no material facts in dispute regarding Plaintiffs' fraudulent inducement claim. Accordingly, and for the reasons set forth below, DMC's Motion should be denied because there are material factual disputes whether the Settlement Agreement is unenforceable because it was procured by fraud.

**1.      Plaintiffs Have Specifically Pled Fraudulent Inducement.**

"The elements of fraudulent misrepresentation and fraudulent inducement are: (1) a false statement concerning a material fact; (2) the representor's knowledge that the representation is false; (3) an intention that the representation induce another to act on it; and (4) consequent injury by the party acting in reliance on the representation." *Moriber v. Dreiling*, 194 So. 3d 369, 373 (Fla. 3d DCA 2016); *Medimport, S.R.L. v. Cabreja*, 929 F. Supp. 2d 1302, 1316 (S.D. Fla. 2013). DMC argues only that Plaintiffs did not plead with particularity the elements of falsity and reliance. DMC is wrong.  Plaintiffs specifically pled both of these elements.

a.      Plaintiffs Have Adequately Pled Falsity.

DMC argues that Plaintiffs have not sufficiently pled that DMC made any false statements, and therefore did not plead falsity.  This argument is firmly contradicted by Plaintiffs' pleadings. Plaintiffs' pleadings include three bases for DMC's false statements: (1) █████████████████ ██████████████████████████████████████████████████ (FAC ¶¶ 89-93, 242, 244; Morrison Answer ¶ 42, Exhs. C, F); (2) ██████████████████████████████████

██████████████████████████████████████████████████████████

████████████████████████ (FAC ¶¶ 89-93, 242, 244; Morrison Answer ¶ 42, Exhs. C, D, F); and

(3) ████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████ (FAC ¶¶ 89-93, 242, 244; Morrison Answer ¶ 42, Exh. C, D, F). DMC's

attempt to distract from the clear pleading on this issue fails for the following reasons.

    ***First***, although difficult to track, it appears that DMC first argues that ████████████

████████████████████████████████████████████. (Motion, p. 19.)  In support,

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

████████████████████████. (*See*, e.g., FAC, ¶ 90 █████████████████

██████████████████████████████████████████████████████████

The  argument  also  fails  because  Plaintiffs'  pleadings  also  reference  a  ██████████████

██████████████████████████████████████████████████████████

████████████████████████████████ (FAC ¶ 89.)   As stated in  Plaintiffs'

pleadings, this statement by DMC was false because ████████████████████████████

████████████████████████████████ (Morrison Answer, Exh. C.)

DMC cannot simply ignore this allegation at this phase of the case.

    ***Second***, Plaintiffs allege that DMC made a false statement that ████████████████

██████████████████████████████████████████████████████████

████████████ (FAC ¶ 89.)  DMC notably does not dispute this falsehood.  Instead, DMC argues

that "other 'false' statements" alleged by Plaintiffs do not satisfy Rule 9(b) and do "not plead what specifically was said." (Motion, p. 21.)  Of course, DMC cannot seriously argue that an oral misrepresentation must be transcribed verbatim by a court reporter. *Kuehne v. FSM Capital Mgmt., LLC*, No. 12-80880-CIV-ROSENBAUM/SELTZER, 2013 U.S. Dist. LEXIS 60672, at *11 (S.D. Fla. Apr. 29, 2013) (holding that "[c]ontrary to Defendants' suggestion, Plaintiff need not articulate verbatim the particular fraudulent statements made").  Here, Plaintiffs specifically pled the who ("Laurie Stern Torban"), when (on "July 7, 2022"), where (on the telephone), and what ("████████████████████████████████████████████████████ ███████████████████████████████████") to satisfy Rule 9(b)'s particularity requirement. Plaintiffs further pled this was false because "███████████████████████████████ ████████████████████████████████████████████." (Morrison Answer ¶ 42.)  In addition, Plaintiffs have pled the statement was false because t███████████████████ ████████████████████████████████████████████████████████████ ██████████████████████████████████. (Morrison Answer, at ¶ 42.)   Plaintiffs' adequately plead falsity, here, too.

**Third**, Plaintiffs allege that DMC fraudulently omitted the fact that, ████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ██████. (Morrison Answer ¶ 42, Exh. D.)  "Florida law recognizes that fraud can occur by omission," and "does not recognize a stark distinction between fraud by commission and fraud by omission."  *Woods v. On Baldwin Pond, Ltd. Liab. Co*., 634 F. App'x 296, 297-298 (11th Cir. 2015).  For example, in *Woods*, the court held that "[a]lthough [plaintiff's] factual allegations suggested that [defendant] affirmatively misrepresented his intention[, the] pleadings fairly

apprised [defendant] of their claim[, which] is sufficient under our system of notice pleading." *Id.* (noting that Federal Rule of Civil Procedure 9(b), which requires a party to plead fraud with particularity, must not abrogate the concept of notice pleading).  The court held that the plaintiff "adequately pleaded a claim for fraudulent inducement, in the form of fraud by omission, and the district court did not amend their counterclaim by construing it as such." *Id.*

Here, DMC does not even address, let alone dispute, Plaintiffs' assertions that DMC committed fraud by omission even though Plaintiffs have specifically and expressly alleged fraud by omission. As pled by Plaintiffs, ████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████. (Morrison Answer,
¶ 42.) ████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████. *See id.*; *see also Woods*, 634 F. App'x at 297-98 ("Fraud may be established by either an intentional misrepresentations or omission of a material fact.") (quoting *Berg v. Capo*, 994 So. 2d 322, 327 (Fla. 3d DCA 2007)). However, ██████████████████████████████████████████████
████████████████████████████████████████████████████
█████████ (Morrison Answer ¶ 42.)  Accordingly, Plaintiffs have also specifically pled the falsity element of fraudulent inducement by omission, and DMC's Motion should be denied.



### b.   Plaintiffs Have Adequately Pled Reliance.

DMC also alleges that Plaintiffs have not adequately pled that Dr. Morrison "relied on the Hospital's false statements."  (Motion, p. 22.)  As stated, the fourth element of a fraudulent inducement claim is "consequent injury by the party acting in reliance on the representation." *See,*

*e.g.*, *Moriber*, 194 So. 3d at 373.  Here, there can be no doubt that Plaintiffs have adequately pled

this fourth element, and DMC's argument fails for a at least two reasons.

    ***First***, DMC does not actually argue that Plaintiffs have not adequately pled reliance.  This

makes sense, because, indeed, among many other allegations, Plaintiffs allege that "Dr. Morrison

relied on the false premise presented by DMC," that "███████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

███████████  (FAC ¶¶ 90, 93.)  Plaintiffs have also alleged that Dr. Morrison would not have

signed the Settlement Agreement if he knew t██████████████████████████

████. (Morrison Answer ¶ 42.)  There should thus be no reasonable dispute that Plaintiffs pled

reliance here, and if there is any such question of material fact, the pleading stage is not the

appropriate time to resolve that dispute.

    And, ***second***, it appears that DMC wrongly takes issue with the fact that many of the

fraudulent misrepresentations were made to Dr. Morrison's attorney.  DMC's defense here appears

to be that DMC is immune from making fraudulent statements to Dr. Morrison's counsel, unless

Dr. Morrison waives his attorney-client privilege.  DMC cites no legal authority for this untenable

theory.  As his attorney, Tim Monaghan was acting as Dr. Morrison's agent, and therefore, of

course DMC's false statements made to Mr. Monaghan, intended for Dr. Morrison, are indeed

statements directed to Dr. Morrison under general agency principles.

    It is absolutely clear here that Plaintiffs allege that the representation at issue was delivered

to Plaintiffs and that they suffered "consequent injury by the party acting in reliance on the

representation." *See Colombian A.F. Purchasing Agency Acofa v. Union Temporal Ovl CVRA Helicopteros 2018 LLC*, No. 21-CV-62516-RUIZ/STRAUSS, 2022 U.S. Dist. LEXIS 232538, at *23 (S.D. Fla. Dec. 27, 2022) (holding that plaintiff plausibly allege reliance, despite defendant's argument that "[t]here is no specific reference to any precise statements that the Plaintiff allegedly relied upon"); *Cuhaci v. Kouri Grp., LP*, No. 20-cv-23950, 2021 U.S. Dist. LEXIS 105119, at *19 (S.D. Fla. June 2, 2021) ("Accordingly, viewing the allegations as true, the Amended Complaint plausibly alleges that Cuhaci relied to his detriment on Defendants' purported misrepresentations.").  Plaintiffs specifically pled that the fraudulent misrepresentations were communicated to Dr. Morrison (via his representative), because he specifically relied on ██████ ████████████████████████████████████████████████████████████ ████████████████  How else could he rely on these false assertions?  All reasonable inferences are drawn in Plaintiffs' favor, and DMC's attempt to torture the language of both the FAC and the elements of the claim has no merit.  And at the very least, this is a material fact that is in dispute.[2]

Accordingly, DMC's Motion should be denied.

### 2.    DMC's Argument that Morrison Was Not Entitled to Rely on DMC's Misrepresentations is Not Supported by Any Case Law.

DMC also argues that Plaintiffs' fraudulent inducement claim fails because Dr. Morrison is somehow not entitled to rely on DMC's fraudulent misrepresentations.  (Motion, p. 11.)  Like a house of cards, however, DMC's argument falls apart under the very case law upon which it purports to stand.  DMC argues that the "Eleventh Circuit's recent *Affiliati* opinion is highly

---

[2] DMC's argument that a party must waive the attorney-client privilege in order to plead a fraudulent inducement claim is both wrong and a red herring.  This is not a discovery motion, and no position has been taken on attorney-client privilege issues in this case that would be relevant to this motion.

instructive." (Motion, p. 11.)  In *Affiliati*, as in the other two cases cited by DMC – *Mergens v. Dreyfoos* and *Green Leaf Nursery v. E.I. DuPont De Nemours & Co.* – found the justifiable reliance element lacking only where the defendant could establish that the parties:  "[1] were represented by counsel, [2] in an antagonistic and distrusting relationship with the defendants, **and [3] had settled litigation, or threatened litigation, that included accusations of fraud and other dishonest conduct**." *Affiliati Network, Inc. v. Wanamaker*, 847 F. App'x 583, 587 (11th Cir. 2021) (internal quotation marks omitted) (emphasis added).

The point articulated in *Affiliati* is thus clearly inapplicable to this case. To be clear, Plaintiffs make no allegations that the Settlement Agreement had settled ongoing or threatened litigation involving fraud or dishonesty.  DMC proceeds to attempt to sweep this requirement of settled litigation under the rug, never to be heard from again.  Instead, DMC argues that: (1) Dr. Morrison was represented by counsel; (2) DMC and Dr. Morrison were in an antagonistic and distrusting relationship; and (3) "the Amended Complaint contains a multitude of allegations about 'fraud and other dishonest conduct' by the Hospital."  In what appears to be a theme, DMC completely omits the requirement of *settling ongoing or threatened litigation involving fraud or dishonesty*.  Indeed, even DMC does not allege that a fraud or dishonesty litigation was threatened by Dr. Morrison before he signed the Settlement Agreement.

All of the cases cited by DMC for its proposition involved parties that entered into an agreement to settle ongoing or threatened litigation concerning fraud.  *See Affiliati Network, Inc.*, 847 F. App'x at 587 (the parties entered into a settlement agreement to settle an ongoing lawsuit involving fraud); *Green Leaf Nursery v. E.I. DuPont de Nemours & Co.*, 341 F.3d 1292, 1296 (11th Cir. 2003) (parties entered into settlement agreement to settle ongoing fraud lawsuit); *Mergens v. Dreyfoos*, 166 F.3d 1114, 1118 (11th Cir. 1999) (parties entered into agreement to

settle threatened "shareholder's action" concerning waste and breach of fiduciary duties and alleging fraud).[3]  There is not a single allegation in the FAC (or any of Dr. Morrison's pleadings) of any pending or threatened litigation that was settled as part of the Settlement Agreement, let alone litigation that specifically involved fraud or dishonesty.  The FAC clearly alleges that the Settlement Agreement arose out ████████████████████████████████████████ ████████████████████████████████████████████████████████████. (FAC ¶¶ 83-86, 93.)

The ongoing fraud litigation settlement exception simply does not apply here, and DMC's attempt to cram the authorities applying that exception to this case stretches the boundaries of advocacy.

### 3.    Plaintiffs Have Always Sought to Rescind the Agreement.

DMC also argues that Plaintiffs cannot seek to rescind the Agreement because, as DMC falsely misrepresents, Plaintiffs "sought damages for allegedly having been fraudulently induced into the Settlement Agreement."  (Motion, p. 15-17.)  DMC asserts that Plaintiffs have "ratified" the Settlement Agreement by choosing damages instead of rescission.  DMC is again wrong.

DMC points to a single allegation from Plaintiffs' original complaint that Plaintiffs have suffered damages as a result of DMC's fraudulent misrepresentations.  However, the fact that Plaintiffs have *suffered* damages does not mean that they *seek* damages on such a claim, and Plaintiffs have alleged other fraud claims that do not involve the Settlement Agreement.  The relief sought by Plaintiffs is specified within the complaint's Prayer for Relief.  And indeed, in Plaintiffs'

---

[3] *See also Pettinelli v. Danzig*, 722 F.2d 706, 708 (11th Cir. 1984) (Agreement and Release entered into in order to settle a threatened "derivative action"); *Moriber v. Dreiling*, 194 So. 3d 369, 371 (Fla. 3d DCA 2016) (settlement agreement entered into in order to settle ongoing litigation); *Sugar v. Estate of Stern*, 201 So. 3d 103, 104 (Fla. 3d DCA 2015) (settlement agreement entered into to settle ongoing litigation); *Columbus Hotel Corp. v. Hotel Mgmt. Co.*, 116 Fla. 464, 471, 156 So. 893, 895 (1934) (settlement agreement entered into to "settle the pending litigation").

original complaint, Plaintiffs specifically sought in its Prayer for Relief the "rescission of the Settlement Agreement." (Original Complaint (Dkt. No. 1-2, p. 38 Prayer for Relief at (b).) DMC conspicuously omits this dispositive allegation from its Motion. DMC omitted this same allegation from its motion to dismiss the original complaint (Dkt. No. 46), and thus Plaintiffs made it even clearer in the FAC that "[a]s a result of Delray Medical Center's and DMC-MSC's series of fraudulent misrepresentations, Plaintiffs seek rescission of the Settlement Agreement. Plaintiffs have not ever requested damages specifically in connection with Defendants' fraudulent inducement to enter the Settlement Agreement." (FAC, ¶ 248.)

Further, the "election of remedies" doctrine upon which DMC relies, is an "affirmative defense" that is "not a basis for dismissal unless the complaint affirmatively and clearly shows the conclusive applicability of the defense." *Williams v. Gaffin Indus. Servs.*, 88 So. 3d 1027, 1029 (Fla. 2d DCA 2012). "The purpose of the [election of remedies] doctrine is to prevent a double recovery for the same wrong," and where "[p]laintiff has not recovered anything from Defendant; there is no risk of double recovery." *Martinair Holland, N.V. v. Benihana, Inc.*, No. 17-CV-20163-GAYLES, 2020 U.S. Dist. LEXIS 179810, at *6 (S.D. Fla. Sep. 30, 2020) (quoting *Barbe v. Villeneuve*, 505 So. 2d 1331, 1332 (Fla. 1987)). Thus, even if DMC were correct that Plaintiffs' original complaint sought damages for the fraudulent inducement claim (clearly not the case), Plaintiffs have recovered nothing from DMC, there is no risk of double recovery, and thus there is no "conclusive applicability of the defense."

Accordingly, viewing all allegations by Plaintiffs as true, and drawing all inferences in favor of Plaintiffs, DMC's argument must fail as a matter of law, and DMC's Motion should be denied.

####     4.     Plaintiffs Are Not Estopped From Rescinding the Agreement.

In its next attempt, DMC argues that Plaintiffs are estopped from rescinding the Agreement because Dr. Morrison has purportedly "already enjoyed considerable benefits from the Settlement Agreement." (Motion, pp. 17-18.) The main "considerable benefit" to which DMC refers strains credulity: DMC's decision not to file the sham counterclaim it has asserted without merit against Dr. Morrison. This supposed "benefit" fails to support the argument for several reasons.

*First*, DMC again misconstrues the law. In Florida, "[t]he doctrine of estoppel should be applied with great caution and is applied only where to refuse its application would be virtually to sanction a fraud." *Joy v. Oaks Club Corp.*, 343 So. 3d 632, 639 (Fla. 2d DCA 2022) (internal citations omitted). "Before one's acceptance of a benefit can amount to an estoppel, it must be shown that the benefit was accepted with knowledge of all material facts." *Id.* at 640. "Generally, the doctrine of estoppel holds that a person should not be permitted to unfairly assert, assume or maintain inconsistent positions." *Fintak v. Fintak*, 120 So. 3d 177, 185 (Fla. 2d DCA 2013) (internal quotation marks omitted). Here, Plaintiffs' pleadings clearly show a lack of knowledge of all material facts in entering into the Settlement Agreement, and Plaintiffs have not taken any inconsistent positions. At a minimum, this argument is premature at the pleading stage of the case, and discovery on this issue would be required to resolve any dispute of material facts. The doctrine of estoppel, which "should be applied with great caution," thus does not apply here.

*Second*, "DMC's alleged withholding of a claim is not the type of "considerable benefit" contemplated by any of the cases cited by DMC for the proposition that, "once a party accepts the proceeds and benefits of a contract, that party is estopped from renouncing the burdens the contract places on him." (Motion, p. 17.) In what should come as no surprise, all of the cases relied upon by DMC for this proposition involve the plaintiff accepting cash as the "considerable benefit" in

exchange for the release – not some avoidance of a made-up claim.  Each of cases cited by DMC are thus inapplicable.

In *Sherrod v. Sch. Bd. of Palm Beach Cty.*, 550 F. App'x 809, 811 (11th Cir. 2013), the plaintiff received $272,425 in exchange for settling a pending lawsuit and releasing claims.  In *Santana v. Miller*, 314 So. 3d 346, 347 (Fla. 3d DCA 2020), the plaintiff received a payment of two weeks' salary in exchange for a release of claims.  The court there held that a "party seeking to avoid a release must tender the return of whatever has been received in connection with the execution thereof."  By rescinding the release, Plaintiffs have already "returned" whatever "benefit" DMC contends they received.

Further, the *Pipeline Contractors, Inc. v. Keystone Airpark Auth*. case cited by DMC does not have any relation to estoppel for "substantial benefit," and thus is wholly irrelevant.  276 So. 3d 436, 437 (Fla. 1st DCA 2019).  In *Billings v. Orlando*, 287 So. 2d 316, 317 (Fla. 1973), the court held that plaintiffs were paid salaries and received benefits under an employment agreement, and thus could not reject other portions of the employment agreement.  And in *Real v. Goodell*, No. 2:19-CV-35-FTM-29UAM, 2019 WL 2211111, at *2 (M.D. Fla. May 22, 2019), the plaintiff received a $1,000 payment in exchange for a release of claims.  Not one of these cases supports the proposition that the delay of filing a meritless claim can constitute a "considerable benefit" to estop a claim for fraudulent inducement.

***Third***, DMC's counterclaim is entirely bogus and concocted in a transparent scheme to conjure up faux-consideration for the Settlement Agreement.  (*See infra* Section IV.B.)  The filing of a bogus counterclaim cannot create any "considerable benefit" to estop a fraudulent inducement claim, otherwise a defendant can file a meritless claim in order to bar any fraud claim against it in

such a scenario. To the extent that avoiding such a counterclaim were a "benefit" to Plaintiffs, then

Plaintiffs are clearly not enjoying that "benefit," as DMC has asserted such a counterclaim.

And, **fourth**, to the extent DMC argues that Plaintiffs received a "considerable benefit" "by

receiving an ███████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████ .

DMC's "estoppel" argument has no merit, and the Motion should be denied.

### B.     Plaintiffs Have Plausibly Pled that the Settlement Agreement Is Not Supported by Consideration, and It Is Thus Unenforceable.

Plaintiffs have plausibly pled that the Settlement Agreement provided Dr. Morrison with

no consideration.  DMC misconstrues the FAC as arguing that the mutual release of bona fide

claims *can never* serve as sufficient consideration of an enforceable contract. But that is not what

Plaintiffs have alleged. They have simply alleged that the purported release of Dr. Morrison in the

Settlement does not constitute adequate consideration under these particular facts.

This Court has held that plausible allegations of lack of consideration are sufficient at the

pleading stage.  In *United States v. Ashbritt, Inc.*, a plaintiff alleged in a complaint that a release

he entered into "was invalid because it lacked consideration," because the other party's purported

consideration was merely payment of an admitted liability.  No. 09-20458-Civ-TORRES, 2009

U.S. Dist. LEXIS 139365, at *7-8 (S.D. Fla. July 21, 2009).  The court there held that, because it

was plausibly alleged in the four-corners of the complaint, the complaint states a factual and legal

basis for the claim to survive.  *Id*.  The defendant argued that the release contains a recital that presumes that there was consideration, but the court held this "presumption is rebuttable," and thus plaintiff pled sufficient factual allegations "'to raise a right to relief above the speculative level' by claiming the release was unenforceable for a lack of consideration."  *Id*. (internal citations omitted, but quoting 10 Fla. Jur. 2d Compromise, Accord, and Release § 50 for the proposition that it is well settled in Florida that "the releasor may avoid the legal effect of the release on the ground of failure of consideration").   Florida Jurisprudence on Contracts provides that "forbearance to sue upon an unenforceable cause of action is not generally a sufficient consideration," and that "a claim of doubtful validity" may suffice as consideration only "if a person bona fide believes that he or she has a fair chance of success in the lawsuit."   11 Fla. Jur 2d Contracts §§ 85, 87.

Here, as pled in the FAC, "the Settlement Agreement does not provide Dr. Morrison with any consideration and is thus unenforceable for lack of consideration."  (FAC ¶ 94.)  As pled in the FAC, "DMC had no actual or potential claims against Dr. Morrison that were released or could have been released by virtue of the Settlement Agreement."  (*Id*.)  Plaintiffs have also pled that the "release is not consideration at all because DMC had no claims against Dr. Morrison that would have been covered by the release, and DMC did not threaten any such claims against Dr. Morrison in connection with the Settlement Agreement[, and that t]he Counterclaim is a misguided attempt to create the false impression that such a claim existed, but the frivolity of the Counterclaim instead supports the fact that Dr. Morrison received no consideration for the Settlement Agreement." (Morrison Answer, at Answer to DMC's Preliminary Statement No. 2.)   Viewing Plaintiffs' pleadings as true and drawing all inferences in favor of Plaintiffs, the conclusion must be that, at

the pleading stage, Plaintiffs have plausibly pled that the Settlement Agreement is unenforceable for lack of consideration.

Based on Plaintiffs' pleadings, DMC has no, and has never had any, bona fide claims against Dr. Morrison to release.  Conveniently, it was only after Plaintiffs filed their complaint plausibly alleging that the Settlement Agreement was unenforceable for lack of consideration because there were no bona fide claims for DMC to release, that DMC then decided to concoct a hollow, pretextual, and unenforceable counterclaim against Dr. Morrison for the sole reason of creating some faux-consideration.  DMC concocts an elaborate ruse as to "why they filed the counterclaim when they did," but the explanations ring hollow.  And in any event, such explanations may not be resolved on the pleadings.

Further, as set forth in Dr. Morrison's motion to dismiss DMC's Counterclaim, attached to Dr. Morrison's Answer as Exhibit A, DMC's fraud claim fails as a matter of law for several reasons, including that DMC waived any fraud claim when it reappointed Dr. Morrison on October 28, 2021.  Plaintiffs incorporate in full Dr. Morrison's motion to dismiss DMC's Counterclaim (Dr. Morrison Answer, at Exh. A), along with all of Plaintiffs' pleadings and exhibits thereto. Simply put, DMC alleges that Dr. Morrison committed fraud during "███████████████████ ████████████████████████████████████████████████████ ████████████████████████████" (D.E. 65, pgs. 61-63, at ¶¶44 and 48.)  DMC alleges that based on Dr. Morrison's representations, ██████████████ ████████████████████████████. (*Id*., pg. 56, at ¶22.).  DMC then alleges that it discovered the purported "truth" behind misrepresentations between December 2020 and March 2021. (*Id*., pgs. 56-59, at ¶¶24-35.).  However, even according to DMC's allegations, DMC then reappointed Dr. Morrison in October 2021 with the ███████████████████

20

████████████ (D.E. 65-10) that it was allegedly induced by fraud to provide to Dr. Morrison in October 2019.  Accordingly, DMC as a matter of well-established law in Florida has waived its fraud claim and DMC's claim is unenforceable and lacks any merit.  *See, e.g., Price v. Airlift Int'l, Inc*., 181 So. 2d 549, 550 (Fla. 3d DCA 1966) ("The universal general rule is that when a party claiming to have been defrauded enters, after discovery of the fraud, into new arrangements concerning the subject matter of the contract to which the fraud applies, he is deemed to have waived any claim on account of the fraud; and he can neither rescind, nor maintain an action for damages."); *Amoco Oil Co. v. Gomez*, 125 F. Supp. 2d 492, 507 (S.D. Fla. 2000); *Barrakuda Ltd. v. Zazaby Jewels, Inc*., 2020 WL 7493097, at *6 (S.D. Fla. Sept. 24, 2020) (J., Martinez); *Ingram v. Butler*, 2015 WL 9911314, at *4 (S.D. Fla. Dec. 23, 2015) (J., Williams) (citing C*oral Gables Imp. Motorcars, Inc. v. Fiat Motors of N. Am. Inc*., 673 F.2d 1234, 1240 (11th Cir. 1982)); 27 Fla. Jur 2d Fraud and Deceit § 75 ("Execution of a contract with knowledge that an initial agreement was fraudulently procured constitutes a waiver of claims based on the previous fraud.").

Drawing all inferences in favor of Plaintiffs, DMC's Counterclaim is unenforceable as a matter of law, and thus there is no consideration for the Settlement Agreement.  *See* 11 Fla. Jur 2d Contracts §§ 85, 87.  And even if DMC's Counterclaim rises to the level of "doubtful validity," it is a material question of disputed fact as to whether DMC "bona fide believes that [it] has a fair chance of success" on the Counterclaim.  *Id*.  Florida courts have denied motions for summary judgment where there existed "an issue of material fact as to whether plaintiffs' forbearance to sue defendant . . . constituted consideration" due to whether plaintiffs had a bona fide belief of a fair chance of success on their claim.  *See Aschi v. Clearwater Bay Marine Ways, Inc*., 569 So. 2d 1379, 1380 (Fla. 2d DCA 1990).  Florida courts have also affirmed entry of judgment N.O.V. where it was found that forbearance from a suit was not sufficient consideration because the

plaintiff's threatened lawsuit "was not predicated on a valid claim, nor did he have a good faith belief that such a suit would succeed." *Matey v. Pruitt*, 510 So. 2d 351, 353 (Fla. 2d DCA 1987). And as set forth above, this Court has denied a motion to dismiss where a plaintiff pled sufficient factual allegations "'to raise a right to relief above the speculative level' by claiming the release was unenforceable for a lack of consideration." *Ashbritt*, No. 09-20458-Civ-TORRES, 2009 U.S. Dist. LEXIS 139365, at *7-8.

DMC's last-ditch effort is an argument that Dr. Morrison was given other consideration as part of the Settlement Agreement. *First*, DMC argues the Settlement Agreement permitted Dr. Morrison to view ███████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████. (DMC Answer, at Exh. 14.) Thus, Dr. Morrison already had the alleged "benefit" before even signing the Settlement Agreement and such benefit could not, therefore, constitute consideration for entering into the Settlement Agreement. And second, DMC somehow argues that DMC accepting Dr. Morrison's resignation is consideration. This argument strains credulity as it is difficult to reconcile how Dr. Morrison's forced resignation was somehow a benefit to him. On the contrary, that was a benefit to – and indeed the objective of – DMC and its co-conspirators.

Here, accepting all of Plaintiffs' pleadings as true, and viewing them "in the light most favorable to [Plaintiffs]," Plaintiffs have plausibly pled that the Settlement Agreement was unenforceable for a lack of consideration. *See Smith v. Atl. Springs Condo. Ass'n*, No. 0:15-cv-61155-KMM, 2015 U.S. Dist. LEXIS 157830, at *3 (S.D. Fla. Nov. 23, 2015). And at the very

least, "[*i*]*f a comparison of the averments in the competing pleadings reveals a material dispute of fact, judgment on the pleadings must be denied*."  *Id.* (quoting *Perez v. Wells Fargo N.A.*, 774 F.3d 1329, 1335 (11th Cir. 2014)) (emphasis added); *Lakes of the Meadow Vill. Homes Condo. Nos. One v. Arvida/Jmb Partners, Ltd. P'ship*, 714 So. 2d 1120, 1123 (Fla. 3d DCA 1998) (holding that disputes over consideration were "disputed issues of material fact that preclude" even summary judgment).  Accordingly, DMC's Motion should be denied.

### C.      The Scope of Claims Alleged to be Released Is a Question of Fact.

To the extent the Settlement Agreement could be deemed enforceable (it is not), DMC also attempts to argue that various claims in the FAC fall within the scope of the Settlement Agreement's release.  But that question too presents an issue of fact that cannot be determined at this stage.  Therefore, regardless whether the Settlement Agreement is enforceable as a matter of law, DMC has failed to demonstrate at the pleading stage that any particular count in the FAC is covered by Settlement Agreement's release such that it should be dismissed at this stage of the case.  Such a determination can only be made after discovery reveals the underlying details of the claims at issue.

The Settlement Agreement's release relates to claims "*solely* regarding



(DMC Answer, at Exh. 14. (emphasis added).) "

These terms are not, as a threshold matter, defined and thus it cannot be determined on the pleadings whether the allegations fall within the scope of the release language.  It also cannot be determined on pleadings whether some counts relate "*solely*" to the matters described

in the release (and thus covered) or relate to those matters and also to other matters (and thus not covered).

Therefore, regardless of DMC's arguments regarding the Settlement Agreement, no particular count in the FAC could be dismissed at the pleading stage without the benefit of discovery to demonstrate whether it falls within the scope of the purported release.

## V.   <u>CONCLUSION</u>

For all of the foregoing reasons, Plaintiffs respectfully request the Court deny DMC's Motion for Judgment on the Pleadings.

Dated this 1st day of December, 2023

Respectfully Submitted,

/s/ Harvey W. Gurland, Jr.

Sean S. Zabaneh
(*admitted pro hac vice*)
Andrew J. Rudowitz
(*admitted pro hac vice*)
DUANE MORRIS LLP
30 South 17th Street
Philadelphia, PA  19103-4196
Telephone:  215-979-1000
sszabaneh@duanemorris.com
ajrudowitz@duanemorris.com

Harvey W. Gurland, Jr.
Florida Bar No. 284033
Julian A. Jackson-Fannin, Esq.
Florida Bar No.: 93220
DUANE MORRIS LLP
201 South Biscayne Blvd.
Suite 3400
Miami, FL 33131-2318
Telephone: 305.960.2214
HWGurland@duanemorris.com
PNMendoza@duanemorris.com
JMagarin@duanemorris.com

*Counsel for Plaintiffs John F. Morrison, M.D. and Morrison Clinic, P.A.*